UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| YOLANDA RAGLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Yolanda Ragland, and for her claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

PARTIES

1. Yolanda Ragland ("Ragland") is a resident and citizen of the State of Missouri.
2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln in this action.

JURISDICTION AND VENUE

3. Ragland brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.
4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).
5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.
7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

STATEMENTS OF FACT

9. Since July 1996, Ragland worked for St. Luke's Health Systems ("St. Luke's"). Her most recent position was in the role of Scheduler.
10. St. Lukes' sponsored a group welfare benefits plan ("Plan") for its participating employees, including long-term disability ("LTD") benefits and life insurance benefits.
11. The Plan is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).
12. The Plan offered long-term disability ("LTD") benefits and life insurance benefits to qualifying St. Luke's employees, including Ragland.
13. At all relevant times, Ragland was a participant and a covered person under the Plan.
14. St. Luke's is the administrator of the Plan.
15. St. Luke's delegated or attempted to delegate the function of issuing claim determinations under the Plan to Lincoln.
16. St. Luke's and Lincoln entered into an administrative services contract through which St. Luke's paid Lincoln for acting as claim administrator.
17. Ragland enrolled in LTD benefits and life benefits under the Plan, and Ragland was eligible for those benefits.
18. Ragland's LTD policy ("the LTD Policy") provides that employees would be entitled to

receive LTD benefits if they became "Disabled."

19. The LTD Policy defines "Disabled" as follows:

*Applicable to Class 1, 4:*

*b.* *i. if the Covered Person is eligible for the 24 Month Own Occupation benefit,* ***"Disability"*** *or* ***"Disabled"*** *means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

20. The LTD Policy defines "Material and Substantial Duties" as follows:

***"Material and Substantial Duties"****, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

21. Ragland's life insurance policy ("Life Policy") allows for the waiver of premiums for life insurance benefits coverage ("LWOP") when a particiapnt becomes "Totally Disabled," provided that:

*If a Covered Employee becomes Totally Disabled while insured under this policy he may be eligible for continued Life Insurance coverage without premium payment, provided that:*
*1. he becomes Totally Disabled while insured under this policy and before age 60;*
*2. within one year from the date he is no longer in Active Employment, or as soon as reasonably possible, Lincoln receives initial Proof that his Total Disability has continued for 6 months (initial Proof); and*
*3. during the three months before each anniversary of receipt of initial Proof, Lincoln receives Proof of continuation of Total Disability.*

22. The Life Policy defines "Totally Disabled" in the following manner:

*With respect to this provision,* ***"Total Disability"*** *or* ***"Totally Disabled"*** *means the inability, as a result of Injury or Sickness, to perform the Material and Substantial Duties of Any Occupation.*

*With respect to this provision,* ***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform Any Occupation, and cannot be reasonably eliminated or modified.*

*With respect to this provision,* ***"Any Occupation"*** *means any occupation that the Covered Employee is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

23. Ragland's occupation involved almost constant sitting, and more than frequent fingering, keyboarding, bilateral manual hand and finger manipulation, and reaching.

24. During her employment, Ragland, who is 58, began to suffer from severe rheumatoid arthritis, osteoarthritis, carpel tunnel syndrome, lumbar and cervical disc disease, and high blood pressure, among other conditions, which made performing her job duties difficult.

25. Ragland took a short leave of absence in 2020 and received disability benefits for a closed period.

26. Subsequent to her leave, she made an effort to return to work, hoping that the brief respite would allow her to continue working. Her return to work was not successful, and her functional limitations continued to interfere with the performance of her job duties.

27. Because Ragland was no longer able to competitively perform her job duties, St. Luke's gave her the option of resigning or termination, and she ultimately chose resignation.

28. Ragland suffered from a common misconception about LTD insurance, which is that LTD benefits become inaccessible upon termination or resignation. It was not until she sought legal advice on another issue that she became aware of her right to file for LTD benefits. Upon learning of this right, Ragland submitted a notice of claims in November 2023.

29. Recognizing that some time had passed since she last worked, the notice was unusually robust and was accompanied by hundreds of pages of medical records reflecting treatment and diagnoses before, contemporaneous with, and following her cessation of employment at St. Luke's.

30. On December 22, 2023, Lincoln denied Ragland's LTD claim, indicating that a 24-month delay in filing made it impossible to come to a determination on the merits of her Ragland's claim. Lincoln apparently did not conduct any kind of occupational or vocational analysis, nor was her medical evidence apparently ever clinically reviewed.

31. On January 4, 2024, Lincoln notified Ragland that it was reviewing her eligibility for LWOP

benefits and requested that Ragland provide Lincoln with completed forms.

32. On January 16, 2024, Ragland provided Lincoln with the requested information, including a list of all treating medical providers.

33. On February 26, 2024, Lincoln informed Ragland that her claim for LWOP benefits has been denied. Lincoln stated that it had requested copies of medical records and completed forms, but because it had not received all of that information, it must deny Ragland's claim.

34. Lincoln was supplied with all forms it had provided to Ragland, and was also provided the names and addresses of each of Ragland's medical providers, along with authorization to request records from them.

35. On June 17, 2024, Ragland appealed Lincoln's LTD denial and provided Lincoln with additional evidence that she is disabled.

36. On June 19, 20224, Ragland appealed Lincoln's LWOP denial and provided Lincoln with additional evidence that she is totally disabled. R

37. On July 3, 2024, Lincoln again denied Ragland's LTD claim.

38. On August 15, 2024, Lincoln again denied Ragland's LWOP claim.

39. At all relevant times, Ragland was and remains "Disabled" and "Totally Disabled" as those terms are defined under the Plan.

40. Ragland has exhausted all administrative remedies.

<u>CAUSES OF ACTION</u>

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

41. Ragland realleges the preceding paragraphs as if fully set forth herein.

42. Ragland is entitled to all unpaid and accrued LTD benefits, as Lincoln;

    a. Made an unfavorable decision without substantial evidence;

b. Did not properly consider the evidence submitted by Ragland on claim initiation and/or appeal;

c. Failed to properly consider Ragland's medical impairments and resulting limitations; and

d. Issued an unfavorable decision that was arbitrary and capricious.

43. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Ragland is entitled to an award of actual damages for losses suffered.

44. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

45. Lincoln has not satisfied its obligation to pay Ragland's LTD benefits.

46. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Ragland prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

47. Ragland realleges the preceding paragraphs as if fully set forth herein.

48. Ragland is entitled to all unpaid and accrued LWOP benefits, as Lincoln;

e. Made an unfavorable decision without substantial evidence;

f. Did not properly consider the evidence submitted by Ragland on claim initiation and/or appeal;

g. Failed to properly consider Ragland's medical impairments and resulting limitations; and

h. Issued an unfavorable decision that was arbitrary and capricious.

49. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Ragland is entitled to an award of actual damages for

losses suffered.

50. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

51. Lincoln has not satisfied its obligation to pay Ragland's LWOP benefits.

52. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Ragland prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT III
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

53. Ragland realleges the preceding paragraphs as if fully set forth herein.

54. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

55. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary Lincoln of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

56. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Lincoln is a fiduciary.

57. Ragland participated in Lincoln's benefits plans as previously indicated.

58. As the payor of benefits and the entity responsible for benefits determinations, Lincoln operates under an inherent structural conflict of interest.

59. A higher than marketplace quality Lincoln, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Lincoln's actions as a fiduciary.

60. Lincoln breached its fiduciary duty in:

61. Referring Ragland's claim for review to persons who were not able to exercise independent thought or judgment, or deviate from Lincoln's previously expressed position;

    a. Referring Ragland's claim for review to a person who was not qualified to render any medical judgments or opinions;

    b. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

    c. Engaging in a direct structural conflict of interest by referring Ragland claim to a person who is directly answerable to Lincoln and whose employment and compensation is determined by Lincoln;

    d. Failing to perform a meaningful review of Ragland's claim on appeal;

    e. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations; and

    f. Failing to provide all documents relevant to Lincoln's unfavorable decision.

62. Lincoln denied Ragland's benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

63. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Ragland and the Plan's participants and beneficiaries generally.

64. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

65. Lincoln's violations of regulations alone allow Ragland the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

66. Lincoln's violations of federal regulation also subject its decision to de novo review.

67. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Ragland prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Benjamin Narrell
Benjamin Narrell, MO#76715
Derrick Pearce, MO#42793
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
bnarrell@burnettdriskill.com
dpearce@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF